# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| GLENN DAVIDSON ARTHUR,<br><br>            Plaintiff,<br><br>   v.<br><br>ANDREW SAUL[1],<br>   Acting Commissioner of Social Security,<br><br>            Defendant. | 2:18-cv-01783-JAD-CLB<br><br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE**[2] |

This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Glenn Davidson Arthur's ("Arthur") application for disability insurance benefits pursuant to Title II of the Social Security Act. Currently pending before the court is Arthur's motion for reversal or remand. (ECF No. 14/15.) In this motion, Arthur seeks the reversal of the administrative decision and remand for an award of benefits. (*Id.*) The Commissioner filed a response and cross-motion to affirm (ECF No. 21/22), and Arthur filed a reply (ECF No. 23). For the reasons set forth herein, the court recommends that Arthur's motion for remand, (ECF No. 14), be granted, and the Commissioner's cross-motion to affirm, (ECF No. 21), be denied.

## I.    STANDARDS OF REVIEW

### A.    Judicial Standard of Review

This Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of

---

[1]    Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2]    This Report and Recommendation is made to the Honorable Jennifer A. Dorsey, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the Court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where

appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

### B. Standards Applicable to Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of his claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p.1 If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe

medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four in order to determine whether the individual has the RFC to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565,

416.960(b), 416.965. If the individual has the RFC to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any past relevant work or does not have any past relevant work, then the analysis proceeds to the fifth and final step.

The fifth step requires the ALJ to determine whether the individual is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

**II.    CASE BACKGROUND**

   A.    Procedural History

Arthur applied for disability insurance benefits ("DIB") on August 1, 2013 with an alleged disability onset date of July 19, 2013. (Administrative Record ("AR") 184-190.) The application was denied initially (AR 134-36), and upon reconsideration (AR 267-270). Arthur subsequently requested an administrative hearing. (AR 121-22.)

On August 22, 2014, Arthur appeared before Administrative Law Judge ("ALJ") Angela Miranda. (AR 38-78.) A vocational expert ("VE") also appeared at the hearing. (*Id.*) The ALJ issued a written decision on November 14, 2014, finding that Arthur was not disabled because he could perform past relevant work. (AR 18-37.) Arthur appealed, and the Appeals Council denied the request for review on May 15, 2015. (AR 1-6.)

Arthur filed a complaint for judicial review on July 15, 2015 in the United States District Court for the Middle District of Florida. (AR 1107-1110.) The Commissioner filed a Motion for Entry of Judgment with Remand for further administrative proceedings due to new and material evidence, which was granted by the Court. (AR 1064-65.) On remand, the ALJ was instructed to consider further the 100 percent disability rating issued by the Department of Veterans Affairs, and to consider and evaluate the opinion of a treating psychologist, Dr. Monette. (AR 1066-1072.)

On May 5, 2016, a second hearing was held before ALJ Rosanne Dummer. (AR 952-1019.) The ALJ issued a decision on May 26, 2016, again finding Arthur not disabled. (AR 1139-1177.) Arthur requested review by the Appeals Council, who assumed jurisdiction of the case and remanded the case back to the administrative level to address objections made to evidence by Arthur and to update the record. (AR 1178-1184.)

On August 16, 2017, a third hearing was held before ALJ Elving L. Torres. (AR 906-945.) Arthur appeared with a client advocate. (*Id.*) Teresa A. Manning, a VE, also appeared telephonically at the hearing. (*Id.*) The ALJ issued a third decision on November 21, 2017, again finding Arthur not disabled based on his ability to perform work that exists in significant numbers in the national economy. (AR 873-893.) Arthur requested the Appeals Council review this decision, however the Appeals Council denied review on July 18, 2018. (AR 1398, 866-872.) Accordingly, the ALJ's decision became the final decision of the Commissioner. Having exhausted all administrative remedies, Arthur filed a complaint for judicial review on September 14, 2018. (ECF No. 1-1.)

In his reply brief, Arthur notes he was recently found disabled by the Social Security Administration on a subsequent application for benefits beginning August 1, 2018. (ECF No. 23 at 5; ECF No. 23-1.)

B. ALJ's Decision

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 873-893.) Ultimately, the ALJ disagreed that Arthur had been disabled from July 19, 2013, the alleged onset date, through November 21, 2017, the date of the decision. (AR 893.) The ALJ held that, based on Arthur's RFC, age, education, and work experience, he could perform jobs that exist in significant numbers in the national economy. (AR 892-93.)

In making this determination, the ALJ started at step one. Here, the ALJ found Arthur had not engaged in substantial gainful activity since the alleged onset date of July 19, 2013. (AR 879.) At step two, the ALJ found Arthur had the following severe impairments: posttraumatic stress disorder ("PTSD") with depression, lumbar spine degenerative disc disease, and history of

obstructive sleep apnea ("OSA"). (*Id.*) At step three, the ALJ found Arthur did not have an impairment or combination of impairments that either met or medically equaled the severity of those impairments listed in 20 C.F.R. Part 404, Subpart P, Appx. 1; 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (AR 879-881.)

Next, the ALJ determined Arthur had an RFC to perform light work as defined by 20 C.F.R. § 404.1567(b), except:

> he is limited to no more than occasional climbing of ramps and stairs, balance, stoop, kneel, crouch, and crawl; but never climb ladders, ropes or scaffolds, or work at open unprotected heights. He can stand and/or walk for two-hour segments in an eight-hour workday, and sit for two-hours (sic) segments in an eight-hour workday, in addition to usual breaks. He must avoid extreme industrial vibrations and extreme loud noise environments, and he cannot operate dangerous fast-moving machinery. In addition, the claimant must avoid managing finances, and he is limited to understanding and carrying out simple, routine, repetitive procedures and tasks, with the remaining ability to make basic decisions and adjust to simple changes in work settings, as long as there are no more than occasional interaction with the public, coworkers, and supervisors.

(AR 881-890.) The ALJ found Arthur's impairments could reasonably be expected to cause some of the symptoms alleged, but that his statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (AR 883.) In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, medical opinions, and factors weighing against Arthur's credibility. (AR 883-890.) The ALJ then determined that Arthur was unable to perform his past relevant work as a military paramedic, bank customer service representative, newspaper salesclerk, or pest control sales representative. (AR 890-91.)

Proceeding to step five, and relying on the testimony of the VE, the ALJ determined that Arthur's age, education, work experience, and RFC would allow him to perform occupations existing in significant numbers in the national economy, such as: office helper, small parts assembler, or copy machine operator (AR 892.) Accordingly, the ALJ held that Arthur had not been under a disability since July 19, 2013 and denied his claim. (AR 892-93.)

//
//
//

**III.    ISSUES**

Arthur seeks judicial review of the Commissioner's final decision denying his DIB under Title II of the Social Security Act. (ECF No. 15.) Arthur raises the following issues for this court's review:

    1.    Whether the ALJ properly weighed the medical opinion evidence;

    2.    Whether the ALJ failed to properly consider the VA disability determination; and,

    3.    Whether the ALJ relied on a flawed hypothetical question to the VE.

**IV.    DISCUSSION**

    A.    <u>The ALJ Improperly Weighed the Medical Opinion Evidence.</u>

Arthur first argues that the ALJ improperly gave "little weight" to the opinions from Arthur's treating psychologist Dr. Monette and treating psychiatrists Drs. Kieffer and Nesterenko, concluding their opinions were not supported by the mental status examinations in their treatment notes. (ECF No. 15 at 22.) The ALJ also gave "little weight" to the opinions from examining psychologist Dr. Cohen, because they were based on a single evaluation and were unsupported by sufficient mental status examinations. (*Id.* at 23.) Next, the ALJ gave "little-to-no weight" to the opinions from examining psychiatrist Dr. Jones for the same reasons. (*Id.*) Instead, the ALJ gave "significant weight" to the opinions from the non-examining state agency consultants. (*Id.*)

        1.    <u>Weight of Treating Physician vs. Non-Examining Physicians</u>

Within the administrative record, an ALJ may encounter medical opinions from the three types of physicians: treating, examining, and non-examining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201-1202 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. *Holohan*, 246 F.3d at 1202. Moreover, a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [a claimant's] case record,"

is entitled to controlling weight. 20 C.F.R. §§ 401.1527(c)(2), 416.927(c)(2); *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). The ALJ is not, however, bound by the conclusions of any particular physician.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and the conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1991) (citation omitted). "The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

                i.        <u>Treating Specialists – Drs. Monette, Kieffer, and Nesterenko</u>

Arthur first argues that the ALJ erred by focusing on some normal or mild mental status findings in the treatment records to discount the opinions of the treating doctors, while ignoring other evidence supporting their opinions. (*Id.*) Each of the treating sources cited specific and numerous mental status abnormalities supporting their opinions. (AR 499, 505, 2346, 2561.) Arthur argues these findings are confirmed by significant mental status abnormalities, including evidence of deficits in executive functioning, psychomotor abnormalities, a depressed mood, an anxious and constricted affect, nightmares, intrusive memories, and limited insight, judgment, and impulse control. (AR 508-09, 525-26, 607, 1699, 1707, 1986, 2257, 2270-71, 2358-59, 2448, 2459-2460, 2483-84, 2553.) Arthur alleges the ALJ erred by "picking and choosing" the normal or mild findings while ignoring the other abnormalities relied on by the treating specialists without explaining how the normal findings were more relevant. (ECF No. 15 at 23.) Arthur also argues

9

the ALJ erred by discounting the treating source opinions because Arthur is able to engage in sporadic activities of daily living. (*Id.* at 24.)

In his decision, the ALJ afforded "little weight" to the opinions of Drs. Monette, Kieffer, and Nesterenko because: (1) their assessments and conclusions were inconsistent with the findings in their respective mental status examinations; and (2) the assessments were inconsistent with the level of functioning Arthur engaged in, such as walking his dog, swimming once a week, participating in the Wounded Warrior Program, traveling out of state for VA events, bicycle riding, and attendance of a couples retreat through the VA. (AR 889-890.)

In a mental impairment questionnaire dated August 6, 2014, Arthur's treating psychologist, Dr. Monette, opined based on her treatment of Arthur that he was not a malingerer, and he had marked[3] limitations in his ability to do the following: (1) carry out detailed instructions, (2) sustain ordinary routine without supervision, (3) work in coordination with or near others without being distracted by them, and (4) complete a workday without interruptions from psychological symptoms. (AR 498-502.) In 2015, Dr. Monette wrote a letter noting Arthur has marked limitations in carrying out simple instruction and his attention and concentrations deficits are more evident when asked to persist on a task for a long period of time. He also has difficulty with authority figures, which would also likely impact his occupational functioning. (AR 1880, 1885.) On May 29, 2015, Dr. Monette completed a Mental Residual Functional Capacity Assessment. (AR 1887-1891.) Dr. Monette opined that Arthur had a "fair" prognosis, was not a malingerer, and due to his mental health diagnosis, Arthur would have difficulty adhering to a regular work schedule. (*Id.*) Dr. Monette also opined that Arthur had a marked[4] limitation to function in the following areas: (1) the ability to carry out detailed instructions, (2) the ability to maintain attention and concentration for extended periods, (3) the ability to make simple work-related decisions, (4) the ability to complete a normal workday and workweek without interruptions from psychologically based

---

[3] "Marked" is defined in the Questionnaire as: "Symptoms *constantly interfere* with ability (Constant – more than 2/3 of an 8-hr. workday)." (AR 501) (emphasis in original).

[4] "Marked" is defined in the RFC form as: "The ability to function in this area is seriously limited." (AR 1889.)

10

symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods, (5) the ability to interact appropriately with the general public, (6) the ability to accept instructions and respond appropriately to criticism from supervisors, (7) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, (8) the ability to respond appropriately to changes in the work setting, and (9) the ability to tolerate normal levels of stress. (AR 1889-1891.)  Dr. Monette opined that Arthur had an extreme[5] limitation to function in the following area: (1) the ability to work in coordination with or proximity to others without being distracted by them. (AR 1890.)

In a mental impairment questionnaire dated August 6, 2014, Arthur's treating psychiatrist, Dr. Kieffer, opined based on his treatment of Arthur that he was not a malingerer, and he had moderate-to-marked[6] limitations in his ability to do the following: (1) work in coordination with or near others without being distracted by them, (2) complete a workday without interruptions from psychological symptoms, (3) interact with the public, (4) accept instructions and respond appropriately to criticism from supervisors, (5) get along with coworkers or peers without distracting them, (6) maintain socially appropriate behavior, and (7) respond appropriate to workplace changes. (AR 504-507.)  Arthur was treated by Dr. Kieffer once every two to three months starting in November 2013. (AR 504.)

In a mental impairment questionnaire dated March 11, 2016, Arthur's treating psychiatrist, Dr. Nesterenko, opined based on her treatment of Arthur that he was not a malingerer, and had marked[7] limitations in his ability to do the following: (1) understand and remember detailed instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods, (4) perform activities within a schedule and consistently be punctual, (5) sustain

---

[5] "Extreme" is defined in the RFC form as: "The ability to function in this area is precluded." (AR 1889.)
[6] "Moderate-to-marked" is defined in the Questionnaire as: "Symptoms *frequently interfere* with ability (Frequent – 1/3–2/3 of an 8-hr. workday)."  (AR 506)(emphasis in original).
[7] "Marked" is defined in the Questionnaire as: "Symptoms *constantly interfere* with ability (Constant – more than 2/3 of an 8-hr. workday)." (AR 501) (emphasis in original).

ordinary routine without supervision, (6) work in coordination with or near others without being distracted by them, (7) complete a workday without interruptions from psychological symptoms, (8) perform at a consistent pace without rest periods of unreasonable length or frequency, (9) interact appropriately with the public, (10) accept instructions and respond appropriately to criticism from supervisors, (11) get along with coworkers or peers without distracting them, and (12) travel to unfamiliar places or use public transportation. (AR 2345-2349.)  In a subsequent mental impairment questionnaire dated January 21, 2017, Dr. Nesterenko again opined that Arthur had marked limitations in the above areas, as well as a marked limitation in his ability to respond appropriately to workplace changes. (AR 2560-2564.)  Dr. Nesterenko also stated Arthur has episodes of decompensation or deterioration, he cannot work, cannot tolerate public places, and he has anger, anxiety, and a "significant executive function deficit." (AR 2562.)

Each of the treating sources cited specific and numerous mental status abnormalities supporting their opinions. (AR 499, 505, 2346, 2561.)  These findings are confirmed by significant mental status abnormalities, including evidence of deficits in executive functioning, psychomotor abnormalities, a depressed mood, an anxious and constricted affect, nightmares, intrusive memories, and limited insight, judgment, and impulse control.  (AR 508-09, 525-26, 607, 1699, 1707, 1986, 2257, 2270-71, 2358-59, 2448, 2459-2460, 2483-84, 2553.)

While treatments notes for Arthur often included normal or mild mental status findings, the ALJ failed to address the abnormal findings and failed to address how the normal findings were more relevant than the abnormal findings.  Further, no medical source opined that the evidence cited by the treating sources could not cause the limitations they observed.  Moreover, and significantly, the ALJ afforded greater weight to the opinions of doctors who had *no* treating or examining history of Arthur.  While an ALJ may properly consider the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician when assessing a treating physician's medical opinion, 20 C.F.R. § 404.1527(c)(2)(i), the ALJ in this case favored the opinions of doctors who had *no* treating history with Arthur.  The ALJ failed to provide a detailed and thorough explanation of why the observations and assessments of Arthur's treating doctors of

his limitations should be afforded less weight than those of non-treating, non-examining doctors, who did not have the benefit of the full record.

As to Arthur's ability to engage in activities of daily living, Arthur did not describe activities he performs on a regular and continuing basis that can be compared to full-time work. To the contrary, Arthur testified that he spends much of his time on the couch watching television, he occasionally walks his dog, somedays he does not get dressed due to periods of depression, while he is able to drive, his wife does most of the driving, and his wife "does everything" for him, including cooking, household cleaning, and laundry. (AR 54, 56, 63-64, 70-71, 910, 922-923, 962, 965, 978.) The fact that Arthur is able to walk his dog, swim once a week, and participate in Wounded Warrior and associated events does not mean Arthur is able to perform full-time work and Arthur should not be penalized for attempting to lead a normal life despite his PTSD diagnosis. *See Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998) (recognizing that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," we have held that "[o]nly if his level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on his credibility.")

Accordingly, the court finds that the ALJ failed to articulate specific and legitimate reasons for affording less weight to the opinions of Arthur's treating doctors.

          ii.    <u>Non-Examining State Agency Consultants vs. Examining Doctors</u>

Next, Arthur argues the ALJ erred by affording significant weight to the opinions of four non-examining state agency consultants. (*Id.* at 25.) The first non-examining psychologist reviewed the claim file on September 13, 2013. (AR 84-85, 88-90.) The second non-examining psychologist reviewed the claim file on October 10, 2013, before Arthur began consistent mental health treatment. (AR 100-101, 105-107.) The third non-examining psychologist reviewed the file on August 17, 2015. (AR 1079-1084.) The fourth non-examining psychologist reviewed the file on November 13, 2015, which included records through September 2015. (AR 1093-1099.) The SSA did not provide opinions from the treating or examining doctors to the latter consultants. (AR 1084, 1099.) Further, the ALJ rejected consistent opinions from examining psychologist Dr. Cohen and examining psychiatrist Dr. Jones because they were based on one-time evaluations and because

13

he believed the opinions were unsupported by the mental status findings. (AR 890.) However, the ALJ relied on opinions from consultants who never examined Arthur and reviewed an incomplete record.

In his decision, the ALJ afforded "little weight" to the opinion of examining psychologist Dr. Cohen and "little-to-no weight" to the opinion of examining psychiatrist Dr. Jones because: (1) their opinions were based on one-time examinations; and (2) their opinions were unsupported by the mental status findings. (AR 889.)

The court is particularly troubled by the ALJ affording "little weight" and "little-to-no weight" respectively to Drs. Cohen and Jones based on their opinions being "one-time" examinations, when "significant weight" was afforded to those doctors who had *no* treating or examining history of Arthur. Accordingly, this cannot be a specific and legitimate reason for affording less weight to Arthur's examining doctors.

According to Social Security Ruling ("SSR") 96-6p (1996 WL 374180), opinions from non-examining sources may outweigh those from examining sources, only in particular circumstances, such as when they review a "complete case record that includes a medical report from a specialist." Here, the opinions from the non-treating, non-examining consultants, each of whom reviewed an incomplete record, are not entitled to significant weight because they are contradicted by the well-supported opinions of both Arthur's treating doctors and the examining physicians.

Taking into consideration all the evidence of record, including the testimony heard at each of the administrative hearings, the court finds the ALJ failed to provide specific and legitimate reasons for affording more weight to the non-examining state agency consultants than to the opinions of Arthur's treating and examining doctors.

B. <u>The ALJ Improperly Considered Arthur's 100 Percent VA Disability Rating.</u>

Arthur next argues the ALJ failed to properly consider the VA disability determination finding he had a 100 percent service-connected disability due to his PTSD. (ECF No. 15 at 27-29.) Arthur argues that the Ninth Circuit has consistently held that simply recognizing that VA disability determinations use slightly different standards than SSA determinations is not a sufficient

explanation for giving little weight to a VA disability determination. (*Id.* at 28.)  Thus, the ALJ failed to set forth persuasive, specific, valid reasons for rejecting the VA disability determination.

The Commissioner asserts that the ALJ properly gave little weight to the VA disability determination because the substantive standards are "extremely different" between the programs. (ECF No. 21 at 6.)  The Commissioner also argues the ALJ properly sought vocational expert testimony to determine that Arthur's RFC remained consistent with the ability to perform work that exists in significant numbers within the national economy. (*Id.*)  Further, mere invocation of the VA disability is insufficient to establish reversible legal error. (*Id.*)

As to the VA disability determination, the ALJ found the following:

> [T]he claimant was given a "100% disability" finding by the Department of Veterans Affairs.  Nonetheless, the undersigned gives VA's disability findings little weight because the standards used by the VA to adjudicate disability are extremely different, and have very little to do with the standards used by the Social Security Administration. Furthermore, the disability determinations made by the VA are made by lay adjudicators, and are not medical opinions from medical experts or acceptable medical sources. Therefore, these VA disability determinations do not help the undersigned in assessing a residual functional capacity.

(AR 890.)

As a matter of first impression in *McCartey v. Massanari*, 298 F.3d 1072 (9th Cir. 2002), the Ninth Circuit addressed the evidentiary significance of a VA disability rating, and held, like other circuits, "that although a VA rating of disability does not necessarily compel the SSA to reach an identical result, 20 C.F.R. § 404.1504, the ALJ must consider the VA's finding in reaching his decision." *McCartey*, 298 F.3d at 1076.  The Ninth Circuit concluded "an ALJ must ordinarily give great weight to a VA determination of disability." *Id*.  Nevertheless, "[b]ecause the VA and SSA criteria for determining disability are not identical … the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* (citation omitted).

In *Valentine v. Commissioner of Social Security Administration*, 574 F.3d 685 (9th Cir. 2009), the Ninth Circuit stated "[i]nsofar as the ALJ distinguished the VA's disability rating on the ground that the VA and SSA disability inquiries are different, her analysis fell afoul of *McCartey*." *Valentine*, 574 F.3d at 695.  Despite this error, the Ninth Circuit found the ALJ did assert a valid

reason for giving less weight to the VA's disability rating. The ALJ stated the VA determination "was not based on a comprehensive evaluation of the evidence available," which appeared in the same paragraph where the ALJ justified her decision to discredit the opinion of one of her doctors. *Id.* The Ninth Circuit concluded it was "the ALJ referring to the fact that the VA rested on an opinion that the ALJ rejected." *Id.* The Ninth Circuit also noted "the ALJ benefitted from the opinions of the agency psychologists, evidence of Valentine's work history and post-retirement activities, and the input of the vocational expert." *Id.* The court concluded "[t]he ALJ was justified in rejecting the VA's disability rating on the basis that she had evidence the VA did not, which undermined the evidence the VA did have" and this constituted a persuasive, specific, and valid reason supported by the record for according little weight to the VA disability determination. *Id.*

In *Berry v. Astrue*, 622 F.3d 1228 (9th Cir. 2010), the ALJ gave three reasons for discounting the VA's disability rating, one of which was a statement that the SSA is not bound by the VA's determination because the governing rules differ. *Berry*, 622 F.3d at 1236. The Ninth Circuit specifically stated this is not a "persuasive, specific, valid reason[]" for discounting the VA determination. *Id.* (citing *Valentine*, 574 F.3d at 695).

Thus, in Arthur's case, the ALJ's conclusion that the VA program uses slightly different standards than the SSA is not a "persuasive, specific, valid reason[]" for discounting the VA determination. Therefore, the court concludes that the ALJ erred by affording little weight to the VA disability determination.

        C.    <u>Harmless Error</u>

Courts in the Ninth Circuit "will not reverse the decision of the ALJ for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Consistent with the court's duty to review the ALJ's decision for substantial evidence rather than affirm upon its own independent findings, the court must exercise caution when relying on the harmless error doctrine. *See Stout*, 454 F.3d at 1054. Only where a reviewing court can "confidently conclude" that no reasonable ALJ would have reached a different determination is the ALJ's error is harmless. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

The reversible errors in the ALJ's RFC determination are not harmless. For the reasons stated above, the court cannot conclude that no reasonable ALJ would have reached a different determination because of the ambiguities in the ALJ's opinion. Therefore, the court finds the reversible errors are not harmless.

### D. Remand for Benefits

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987); *Stone v. Heckler,* 761 F.2d 530, 533 (9th Cir. 1985); *see also Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015) (amended Feb. 5, 2016) ("The only issue on appeal is whether the district court abused its discretion in remanding for further proceedings instead of remanding for benefits."); *Terry v. Sullivan,* 903 F.2d 1273, 1280 (9th Cir. 1990) (noting that the court has the "discretion to remand so that the Secretary may further develop the record").

Our case law precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met. *Burrell v. Colvin,* 775 F.3d 1133, 1141 (9th Cir. 2014) (discussing *Garrison v. Colvin,* 759 F.3d 995 (9th Cir. 2014). The court has found that the ALJ's RFC determination lacks the support of substantial evidence in the record. A district court may remand a case to an ALJ with instructions to award benefits only where all three prongs of the credit-as-true test are met. *Garrison*, 759 F.3d at 1020. Under that test, (1) the record must be fully developed, such that further administrative proceedings would serve no purpose; (2) the ALJ must have failed to articulate legally sufficient reasons for rejecting medical opinion evidence or claimant's testimony; and (3) if on remand the rejected evidence were credited as true, the ALJ would be required to find the claimant disabled. *Id.* Even in the "rare circumstances" where the test is satisfied, a court may find that remand for further proceedings is appropriate. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

First, the court finds the record has been fully developed and further administrative proceedings would serve no useful purpose. Next, for the reasons discussed above, the ALJ failed to articulate legally sufficient reasons for rejecting medical opinion testimony. Lastly, it is apparent that if the improperly discredited evidence were credited as true, the ALJ would be required to find

Arthur disabled on remand. The vocational expert testified there is no work a person could perform if he is off task for as little as 10 percent of a workday (AR 940.) The treating doctors all agree Arthur would be off task from work more than 10 percent of the day. (AR 501-502, 506-507, 1889-1891, 2348-2349, and 2563-2564.) Therefore, the court finds the record directs a finding that Arthur is disabled, and his case should be remanded for an award of benefits.

E.   Other Argument Raised by Arthur

Because the court recommends a remand for benefits, the court will not address Arthur's other arguments relating to the hypothetical to the vocational expert.

**V.   CONCLUSION**

Based on the foregoing, the court recommends that Arthur's motion to remand (ECF No. 14) be granted, and the Commissioner's cross-motion to affirm (ECF No. 21) be denied.

1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.   This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

**VI.   RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Arthur's motion for remand (ECF No. 14) be **GRANTED**, and the Commissioner's cross-motion to affirm (ECF No. 21) be **DENIED**; and

**IT IS FURTHER RECOMMENDED** that this case be **REMANDED** for an award of benefits.

**DATED**: February 14, 2020.

_____
**UNITED STATES MAGISTRATE JUDGE**